PALMER SQUARE LIMITED PARTNERSHIP, A CONNECTICUT
LIMITED PARTNERSHIP, PLAINTIFF, v. ELIZABETHTOWN
WATER COMPANY, DEFENDANT.

Superior Court of New Jersey
Chancery Division Mercer County

Decided December 3, 1982.

Michael F. Spicer for plaintiff (Jamieson, McCardell, Moore, Peskin & Spicer, attorneys).

Walter M. Braswell for defendant.

DREIER, J.S.C.

Plaintiff's motion for summary judgment presents the court with a novel issue: When the private owner of ·a vacated public street calls upon a private water company to remove pipes which its predecessor had installed in the street bed, must the water company remove the pipes and, if so, who must bear the cost? This court holds that under the facts of the instant case the water company must both remove its pipes and bear the cost of the removal.

In 1966 the Borough of Princeton vacated a portion of John Street in downtown Princeton. The ordinance provided specifically that "[a]ll public rights in ... John Street ..., including all public rights in any and all municipally owned sanitary sewers and storm drains therein, are hereby released, extin-

guished and vacated . . . ." As a result, Palmer Square, Inc., the abutting owner on both sides of John Street, became vested with title to the vacated portion of the street. *Palisades Properties, Inc. v. Brunetti*, 44 *N.J.* 117, 129 (1965). In 1981 Palmer Square, Inc. was acquired by Palmer Square Ltd., plaintiff here. This action for a declaratory judgment insued when Palmer Square, Ltd. and the Elizabethtown Water Company, present owner of the water line, were unable to agree as to who should bear the cost of removing the pipes from what had once been the bed of John Street—a removal which Palmer Square, Ltd. asserts is integral to its plan to redevelop an area in downtown Princeton.

▇ An analysis of the parties' rights must start with an understanding of the nature of the interest which the water company acquired in the street bed. The water company evidently laid its pipes under authority of *N.J.S.A.* 48:19–17, which provides:

Each water company may lay its pipes beneath such public . . . streets . . . as it may deem necessary for its corporate purposes, free from all charge to be made by any person or body politic whatsoever for such privilege . . . The consent of the public body charged with the repair and maintenance of such public . . . streets . . . shall first be obtained.

Under the statute, therefore, the water company acquired a franchise to use the public streets with the consent of the municipality. As the Court of Chancery held over a century ago, such interest, which is in the nature of a license [1], is subject and subordinate to the public's interest in the street. *Jersey City v. City of Hudson*, 13 *N.J.Eq.* 420 (Ch.1861); *see, also, Port of N.Y. Auth. v. Hackensack Water Co.*, 41 *N.J.* 90, 97 (1963), and the cases cited therein.

▇ In *Jersey City v. City of Hudson* the court found that a water company must lower its pipes in a street bed at its own

---

[1]No party has asserted that the municipality granted a specific term of years which might have borne upon the nature of the water company's interest. *N.J.S.A.* 48:3–15.

expense when a regrading of the street exposes the pipes. More recently the Supreme Court held that a water company must bear the cost of removing and relocating its lines as required by a change in the public use of the right of way—in this case, the reconstruction of the George Washington Bridge and the Lincoln Tunnel. *Port of N.Y. Auth. v. Hackensack Water Co., supra.* The court reasoned:

> A utility company is permitted to locate its lines within the public right of way as a use ancillary to the principal and primary use of the way by the public [citations omitted] .... [S]ince ... the primary purpose of the public easement is the public's own use of it, the utility's interest in the public way is subordinate to the public's enjoyment of it. Hence the utility runs the risk that the public welfare may require changes in the road which will call for relocation of its facilities. [41 *N.J.* at 96–97]

Princeton's decision to abandon the public rights in the street was no less an assertion of superior public authority than the water commissioners' decision to improve the street in the *Jersey City* case or the Port Authority's decision to rebuild its bridge and tunnel. Accordingly, a utility's interest in a right of way should expire when the public's interest upon which the utility's interest depends is abandoned.

■ This same conclusion can be reached by yet another route. When a licensor's estate ends, the licensee's rights also terminate. See 3 *Powell on Real Property* § 428 (1981). Were this not so here, the utility's license would be elevated to an easement without compensation ever having been paid either to the municipality when it owned the right of way or to the abutting owners when they succeeded. Under the statute, furthermore, the water company was given this limited right to lay its lines under the public street "free from all charge." *N.J.S.A.* 48:19–17. As a matter of equity, the water company should acquire thereby no protection against the risk of having to move the lines at its own expense. If it wishes such protection, it is at liberty to purchase an easement or to exercise its right of eminent domain, *N.J.S.A.* 48:19–15.1, thereby acquiring an interest more enduring than a dependent license. For a fair consideration defendant could have acquired a specific right to a

particular location, but it chose a different and less expensive course, with its attendant risks.

It is not the intention of this court to thwart the water company's exercise of its right to eminent domain or its right to negotiate for the purchase of an easement; nor would the court interfere in any way with the water supply of the citizens of Princeton. The effect of this decision, therefore, shall be stayed to permit the water company to meet its obligations by acquisition of an easement by condemnation proceedings, or by removing its lines (at its own expense) to another street where it may install them pursuant to its statutory franchise. The order will be stayed for a period of 90 days during which defendant shall present to plaintiff a plan of removal, acquisition, or condemnation.